**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ernesto IBARRA–GALINDO,
Defendant–Appellant.**

**No. 99–30090.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 12, 1999.

Filed March 27, 2000.

Michael Filipovic, Assistant Federal Public Defender (argued), Seattle, Washington, for the defendant-appellant.

Helen J. Brunner (argued), Assistant United States Attorney, Seattle, Washington, for the plaintiff-appellee.

Before: CANBY, BRUNETTI, and O'SCANNLAIN, Circuit Judges.

Opinion by Judge O'SCANNLAIN; Dissent by Judge CANBY.

O'SCANNLAIN, Circuit Judge:

We must decide whether a state felony drug crime, which would not be a felony under federal law, nevertheless may constitute an "aggravated felony" for purposes of enhancing a sentence for illegally reentering the United States.

I

■ Ernesto Ibarra–Galindo, a native and citizen of Mexico, appeals the district court's decision to apply, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2L1.2(b)(1)(A), a sixteen-level enhancement to his sentence for illegally reentering the United States after having been deported for an aggravated felony. See 8 U.S.C. 1326(a). We review the district court's interpretation of the Sentencing Guidelines de novo. See United States v. Bailey, 139 F.3d 667, 667 (9th Cir.1998).

Ibarra–Galindo has been deported from the United States four times. Prior to his last deportation in May 1997, he pled guilty to possessing cocaine (approximately 0.4 grams) in violation of Washington State law. He was convicted and imprisoned for two months. Ibarra–Galindo's conviction was a felony under Washington law, but his offense would have amounted only to a misdemeanor under federal law. See 21 U.S.C. § 844(a).

In June 1998, Ibarra–Galindo was again in jail in Washington State, this time for stealing a car. When the Immigration and Naturalization Service ("INS") found him there, he was charged with illegally reentering the United States in violation of 8 U.S.C. § 1326(a). He pled guilty to the charge on November 12, 1998, but stipulated as subject to dispute the applicability of the sixteen-level enhancement to his sentence under U.S.S.G. § 2L1.2(b)(1)(A). Although Ibarra–Galindo and the Probation Office expressed their views that U.S.S.G. § 2L1.2(b)(1)(A) was inapplicable, the district court held that the enhancement applied to Ibarra–Galindo's sentence and, after adjusting his total offense level down to 11, sentenced him to 18 months in prison (with credit for time served). Ibarra–Galindo then filed this appeal, and we now affirm his sentence.

II

■ The Sentencing Guidelines' scheme for calculating the punishment for illegal reentry into the United States borrows definitions from several statutes. According to U.S.S.G. § 2L1.2, the base offense level for illegal reentry is eight; under subsection 2L1.2(b)(1), that level

must be increased by sixteen levels "[i]f the defendant previously was deported after a criminal conviction ... for an aggravated felony." Application Note 1 appended to § 2L1.2 indicates that " '[a]ggravated felony,' is defined at 8 U.S.C. § 1101(a)(43)." The government relies here on that definition's inclusion of "illicit trafficking in a controlled substance ... including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). According to 18 U.S.C. § 924(c)(2), " 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)....." Finally, under the Controlled Substances Act, a "felony" is "any Federal or State offense classified by applicable Federal or State law as a felony," 21 U.S.C. § 802(13), and possession of 0.4 grams of cocaine is punishable as a misdemeanor, *see id.* at § 844(a).

Ibarra–Galindo argues that a state drug crime that would amount merely to a misdemeanor under federal law cannot constitute an "aggravated felony" within this definitional scheme, regardless of whether the crime is defined under state law as a "misdemeanor" or a "felony." The crux of his position is that such a crime cannot be a "drug trafficking crime" as defined by 18 U.S.C. § 924(c)(2) because it is not punishable under the Controlled Substances Act as a felony. In short, Ibarra–Galindo contends that, within the phrase "felony punishable under the Controlled Substances Act," "Controlled Substances Act" modifies the meanings of both the word "felony" and the word "punishable."

■ We cannot agree. First, that is not how § 924(c)(2) is written. If Congress had intended the meaning advanced by Ibarra–Galindo, it would have most naturally referred to offenses "punishable as felonies under the Controlled Substances Act," but it did not. It is well established that, when one interpretation of a statute or regulation obviously could have been conveyed more clearly with different phrasing, the fact that the authors eschewed that phrasing suggests, ceteris

paribus, that they in fact intended a different interpretation. *See, e.g., Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co.,* 50 F.3d 1486, 1492 (9th Cir. 1995); *United States v. Rivera,* 996 F.2d 993, 995 (9th Cir.1993).

■ Second, we have noted before that "[s]ection 924(c)(2) of Title 18 ... defines 'drug trafficking crime' broadly." *United States v. Garcia–Olmedo,* 112 F.3d 399, 400 (9th Cir.1997). Hence, although we have not had occasion to do so when the crime at issue would have amounted to a felony under state but not federal law, we have at least twice before held that the phrase "any felony punishable under the Controlled Substances Act" is to be read as comprising two independent elements: The offense must "(a) [be] punishable under the Controlled Substances Act and (b) qualify as a felony." *Id.; see also United States v. Zarate–Martinez,* 133 F.3d 1194, 1200 (9th Cir.1998). We are bound by precedent to reject, therefore, Ibarra–Galindo's premise that, for purposes of § 924(c)(2), the term "felony" refers only to offenses criminalized by the Controlled Substances Act as felonies.

Moreover, we agree with the six other circuits that have addressed this issue that the term "felony" as used within § 924(c)(2) refers to crimes denominated as felonies under *either* federal *or* state law. *See United States v. Simon,* 168 F.3d 1271, 1272 (11th Cir.1999); *United States v. Hinojosa–Lopez,* 130 F.3d 691, 694 (5th Cir.1997); *United States v. Briones–Mata,* 116 F.3d 308, 309 (8th Cir.1997); *United States v. Cabrera–Sosa,* 81 F.3d 998, 1000 (10th Cir.1996); *United States v. Restrepo–Aguilar,* 74 F.3d 361, 364–66 (1st Cir. 1996); *United States v. Polanco,* 29 F.3d 35, 38 (2d Cir.1994). Application Note 1 appended to U.S.S.G. § 2L1.2 supports the conclusion that federal and state felony convictions are to be considered equally relevant. *See Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative....").

It indicates that "any federal, state, or local offense punishable by imprisonment for a term exceeding one year" is a felony for the purposes of this section.[1] U.S.S.G. § 2L1.2 n. 1 (1997). The conclusion is further bolstered by the Controlled Substances Act itself, which stipulates that, for purposes of the Act, "[t]he term 'felony' means any Federal or State offense classified by applicable Federal *or State* law as a felony." 21 U.S.C. § 802(13) (emphasis added).

■ Even if, arguendo, the text of the Guidelines and statutes to which it refers did not compel our conclusion, our construction also appears to advance the policies behind the Sentencing Guidelines. "In measuring the seriousness of a defendant's criminal record, the Guidelines operate on the foundational premise that a defendant's history of criminal activity in violation of state law is to be treated on a par with his history of crimes committed in violation of federal law." *Restrepo–Aguilar*, 74 F.3d at 365. Hence, we may infer that the Sentencing Commission intended with U.S.S.G. § 2L1.2 to affix greater weight to the fact that a defendant has violated what the relevant jurisdiction declares to be a "felony" than to the fact that the federal government demarcates felonies and misdemeanors on a different basis than the state does. Our holding that both state and federal felonies amount to a "felony" for purposes of § 924(c)(2) advances this policy.

1. Ibarra–Galindo was convicted of violating R.C.W. 69.50.401(d), the maximum term of incarceration for which is five years.

2. Ibarra–Galindo contends that we must defer to the BIA's interpretation of "aggravated felony" in *L–G–* under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Given, first, that we do not find the text of the statute ambiguous and, second, that the BIA has no special authority to interpret or implement either the Sentencing Guidelines, in which the term "aggravated felony" (whose ultimate meaning we are construing here) appears, or 18 U.S.C. § 924(c)(2), wherein the contested phrase "felony punishable under the Controlled Substances Act" appears, that proposition

**III**

Ibarra–Galindo argues that we should ignore the plain meaning of the text of 18 U.S.C. § 924(c)(2) and deviate from the unanimous interpretation of our sister circuits because the Board of Immigration Appeals ("BIA") has held, for the purposes of defining "aggravated felony" in a wholly different context, that the term "felony" in § 924(c)(2) refers to federal felonies only. *See In re L–G–*, No. A26-025-339, 1995 WL 582051 (BIA Sept. 27, 1995). The BIA's decision in *L–G–* addressed the eligibility of aliens for asylum and withholding of deportation under 8 U.S.C. §§ 1158 and 1253(h). "That the BIA was persuaded by some of the policies undergirding deportation and asylum determinations to interpret 'aggravated felony' as excluding state-classified felonies punishable only as misdemeanors under federal law does not convince us that Congress, in creating the aggravated felony sentence enhancement, or the Sentencing Commission, in implementing it, intended the same result." *Restrepo–Aguilar*, 74 F.3d at 366; *cf. United States v. Pornes–Garcia*, 171 F.3d 142, 147–48 (2d Cir.1999) (distinguishing the policies underlying that court's decision to follow *L–G–* in the context of asylum eligibility from the policies underlying its decision regarding the meaning of "aggravated felony" for purposes of U.S.S.G. § 2L1.2(b)(1)(A)).[2] We decline to heed the

stretches the *Chevron* doctrine too far. *See id.* at 842–43, 104 S.Ct. 2778 (indicating that "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress" and that deference is owed, where ambiguity appears, only to an agency's interpretation of the "statute which it administers").

Because the statutory text is unambiguous, we must decline as well the dissent's invitation to reach a contrary result by resorting to the text of congressional committee reports and the rule of lenity. As to committee reports, it bears emphasis that "this Court steadfastly abides by the principle that 'legislative history-no matter how clear-can't override statutory text.'" *American Rivers v. Federal Energy Regulatory Comm'n*, 201 F.3d

discordant pronouncement of the BIA, but rather the unanimous chorus of six circuits whose opinions strike for us a decidedly more euphonious note.

## IV

We hold that a crime that is punishable under the Controlled Substances Act amounts to an "aggravated felony" for the purposes of applying U.S.S.G. § 2L1.2(b)(1)(A) so long as it was denominated a "felony" by the jurisdiction in which the perpetrator was convicted.

Ibarra–Galindo was convicted in Washington State of a felony under Washington law, and that felony was punishable under the Controlled Substances Act. Ibarra–Galindo therefore committed an "aggravated felony" for the purposes of U.S.S.G. § 2L1.2(b)(1)(A); the district court thus did not err in applying that subsection's mandatory sixteen-level enhancement to Ibarra–Galindo's sentence for illegal reentry.

AFFIRMED.

CANBY, Circuit Judge, dissenting:

It is a somewhat daunting exercise to conclude that the majority has reached an incorrect result when six other circuits agree with it. With all due respect to this imposing array of authority, I am convinced that their construction of the statutes is erroneous. This case is a perfect example why.

Ibarra–Galindo's guideline offense level of eight has been tripled to twenty-four because he was convicted of a "drug trafficking" crime. 8 U.S.C. § 1101(a)(43)(B); 18 U.S.C. § 924(c)(2). What was that drug trafficking crime? Simple *possession* of *four-tenths* of a *gram* of cocaine! Because common sense rebels at the thought of classifying bare possession of a tiny amount of narcotics as a drug trafficking crime, we should not adopt that interpretation unless the statutory language compels us to conclude that Congress intended such a startling result.[1] The statutory language compels no such conclusion, nor does its history; indeed, both lean in the opposite direction.

The statutory path is admittedly a tortuous one. The sentencing guideline provides for a sixteen-level increase if the defendant entered the United States after having been convicted of an "aggravated felony." U.S.S.G. § 2L1.2(b)(1)(A). An application note provides that " '[a]ggravated felony' is defined at 8 U.S.C. § 1101(a)(43)." *Id.*, comment. (n.1). Section 1101(a)(43)(B) in turn defines "aggravated felony" to include: "illicit trafficking in a controlled substance ..., including a drug trafficking crime (as defined in section 924(c) of Title 18)."

Section 924(c) provides enhanced penalties for a person who uses or carries a firearm in relation to a crime of violence or a "drug trafficking crime." 18 U.S.C.

1186, 1204 (9th Cir.2000) (quoting *Hearn v. Western Conference of Teamsters Pension Trust Fund*, 68 F.3d 301, 304 (9th Cir.1995)). As to the rule of lenity, we may not invoke it unless we have concluded "that there is a *grievous* ambiguity or uncertainty in the statute." *Muscarello v. United States*, 524 U.S. 125, 138, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) (internal quotations and citations omitted) (emphasis added).

We also reject the argument that we have disregarded the Sentencing Commission's straightforward observation that the definition of "aggravated felony" in the Guidelines now conforms to the definition of "aggravated felony" in the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43). We are, as required, relying on the text of § 1101(a)(43)(B) to define the term "aggravated felony" for the

purposes of applying U.S.S.G. § 2L1.2(b)(1)(A); indeed, we have never even suggested that we would interpret 18 U.S.C. § 924(c)(2) differently in applying the Immigration and Nationality Act than we now interpret it in applying the Sentencing Guidelines.

1. I recognize that the question whether a state conviction is for an "aggravated felony" is to be determined categorically, by the conduct proscribed by the state statute, and not by the actual conduct of the offender. *See United States v. Lomas*, 30 F.3d 1191, 1193 (9th Cir.1994). The crime here is simple possession. If that crime is viewed as an aggravated felony, results like the present one will be common.

§ 924(c)(1)(A). "Drug trafficking crime" is further defined as *"any felony punishable under the Controlled Substances Act* (21 U.S.C. 801 et seq.)" or under two other federal statutes not relevant here. 18 U.S.C. § 924(c)(2) (emphasis added). One perfectly permissible way to read this phrase is to require that the conduct proscribed by the state law of conviction be punishable *as a felony* under the Controlled Substances Act. Because such a reading would lead to a sensible result, I would read the words of the statute that way.

I do not rest on personal preference, however. The history of section 924(c)(2) indicates that its purpose was to encompass those crimes that we normally think of as "drug trafficking." Until 1988, section 924(c)(2) defined "drug trafficking" as "any felony violation of Federal law involving the distribution, manufacture, or importation of any controlled substance." 18 U.S.C. § 924(c)(2) (1982 & Supp. V 1987). In the Anti–Drug Abuse Act of 1988, Congress amended this subsection into its present form, defining "drug trafficking crime" as "any felony punishable under the Controlled Substances Act, the Controlled Substances Import and Export Act, or the Maritime Drug Law Enforcement Act." 18 U.S.C. § 924(c)(2) (citations omitted). Congress labeled this change a "clarification." Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 6212, 102 Stat. 4181, 4360. We have held that this "clarification" did not represent a broadening of the definition of "drug trafficking crimes." *See United States v. Contreras*, 895 F.2d 1241, 1244 (9th Cir.1990). It is therefore consistent with the history of section 924(c)(2) to interpret "felony punishable under the Controlled Substances Act" as excluding the crime of simple possession of which Ibarra–Galindo was convicted under state law.

The majority, however, offers reasons for reading the phrase differently, but they

do not hold up. First, the majority suggests that the phrase could have been written more clearly, to state "punishable as felonies under the Controlled Substances Act," and that, because Congress "eschewed" that phraseology, we should not adopt that meaning. It is a rare statute, however, that could not have been written more clearly than it was.[2] We will frequently fall into error if we assume, without evidence, that Congress actually considered and rejected the alternative. The crucial issue is the meaning of the phrase Congress *did* use. It can certainly be read as requiring that the conduct in question be punishable as a felony under the Controlled Substances Act.

The majority also states that our precedent binds us to its interpretation of section 924(c), but it does not. It is true that *United States v. Garcia–Olmedo*, 112 F.3d 399 (9th Cir.1997), stated that, "to meet the definition of an aggravated felony, the offense must be (a) punishable under the Controlled Substances Act and (b) qualify as a felony." *Id.* at 400. It did not hold, however, that a state felony that would not be a federal felony was sufficient; instead, it held that Garcia–Olmedo's crimes would be felonies *under federal law* because his prior conviction renders him punishable under federal law by imprisonment for more than one year. *See id.* at 401. The same was true in *United States v. Zarate–Martinez*, 133 F.3d 1194, 1200 (9th Cir.), *cert. denied*, 525 U.S. 849, 119 S.Ct. 123, 142 L.Ed.2d 99 (1998). Thus there is no precedent of this circuit that binds us to the majority's result. On the contrary, in *United States v. Lomas*, 30 F.3d 1191 (9th Cir.1994), we examined a conviction under a state statute proscribing transportation of drugs. The state authorized a penalty of more than one year, but we did not rely on that fact to hold that the *conviction* was an aggravated felony. Instead, we held that transportation was similar to trading or manufacturing, and qualified as "drug

**2.** We could as easily assert that Congress had the option in section 924(c)(2) of saying "punishable under the Controlled Substances Act and constituting a felony under either federal

or state law." Then, by "eschewing" such language, Congress must have meant to avoid that construction.

trafficking." *See id.* at 1194. We also pointed out that transportation was "analogous to 21 U.S.C. § 952, which is included in 18 U.S.C. § 924(c)(2)'s definition of 'drug trafficking crime.'" *Id.* It is clearly inconsistent with the reasoning of *Lomas* to hold that the state crime of simple possession of drugs is a "drug trafficking crime."

The majority finds support for its decision in 21 U.S.C. § 802(13), which provides: "[t]he term 'felony' means any Federal or State offense classified by applicable Federal or State law as a felony." This definition, however, refers to the meaning of "felony" only "[a]s used in this subchapter." 21 U.S.C. § 802. We are not defining "felony" as used in this subchapter, or any subchapter, of Title 21. We are defining "felony" as used in 18 U.S.C. § 924(c)(2). Thus the definition in 21 U.S.C. § 802(13) is utterly irrelevant to our purpose.

There is a much better source from which to discern how state law meshes into the meaning of "aggravated felony," and its history makes clear that Congress did not intend the meaning adopted by the majority opinion. In 1990, Congress amended 8 U.S.C. § 1101(a)(43) to state:

> The term ["aggravated felony"] applies to an offense described in this paragraph whether in violation of Federal or State law. . . .

This amendment did not come out of the blue. Earlier in 1990, the Board of Immigration Appeals had decided *Matter of Barrett*, 20 I. & N. Dec. 171 (BIA 1990). In *Barrett*, the question was whether the definition of aggravated felony set forth in section 1101(a)(43), and thus by reference in section 924(c)(2), was limited to *federal*

drug trafficking convictions. The BIA held that it was not; a state conviction that contained the same elements would also qualify. *See id.* at 174. Thus, the BIA held that

> the definition of "drug trafficking crime" at 18 U.S.C. § 924(c)(2), as incorporated into the Immigration and Nationality Act by section 101(a)(43) of the Act, includes a state conviction *sufficiently analogous to a felony offense* under the Controlled Substances Act. . . .

*Id.* at 175 (emphasis added). The Board further explained:

> [I]t is unreasonable to assume that Congress, in choosing the definition of "drug trafficking crime" at 18 U.S.C. § 924(c)(2), sought to differentiate between aliens convicted of *similar drug-related offenses* on the basis of whether the conviction was accomplished under state or federal law.

*Id.* (emphasis added).[3] The Board accordingly remanded the case to the immigration judge to determine whether the state offense of which the alien had been convicted "includes all the elements necessary for a conviction under 21 U.S.C. § 841(a)(1)," which proscribes distribution or possession with intent to distribute. *Id.* at 178.

Several months later, Congress enacted the previously-quoted amendment to section 1101(a) to specify that "aggravated felony" applied to the offenses described whether they were violations of federal or state law. The House Judiciary Committee explained the amendment as follows:

> Under current law aliens who are convicted of committing an "aggravated felony" (a defined term) become subject to a number of disabilities. They are . . .

---

**3.** The majority opinion asserts that its holding is consistent with the purposes of the Guidelines, which "operate on the foundational premise that a defendant's history of criminal activity in violation of state law is to be treated on a par with his history of crimes committed in violation of federal law." *United States v. Restrepo–Aguilar*, 74 F.3d 361, 365 (1st Cir.1996). But if criminal activity is treated *on a par*, then it should have the same

consequences whether the activity was a violation of state or federal law. More appropriate to this case is the basic approach of the Congress in establishing the guideline system: "Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." U.S.S.G. Ch.1, Pt.A, (3) P.S.

subject to severe penalties if they unlawfully reenter the United States after being deported.... Current law clearly renders an alien convicted of a *Federal* drug trafficking offense an aggravated felon. It has been less clear whether a *state* drug trafficking conviction brings that same result, although the Board of Immigration Appeals in *Matter of Barrett* (March 6, 1990) has recently ruled that it does. Because the Committee concurs with the recent decision of the Board of Immigration Appeals and wishes to end further litigation on this issue, section 1501 of H.R. 5269 specifies that drug trafficking (and firearms/destructive device trafficking) is an aggravated felony whether or not the conviction occurred in state or Federal court.

H.R.Rep. No. 101–681(I), at 147 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6553. It is thus clear that the concern of Congress was with "drug trafficking," whether the conviction was state or federal, not with "drug offenses" or "drug possession." It is also clear that the approach of the Board in *Barrett* met with Congress's approval. If it is good enough for Congress it ought to be good enough for us.

The Board has continued to adhere to its *Barrett* approach. In the case of *In re L–G–,* Int. Dec. 3254, 1995 WL 582051 (BIA 1995), the Board held that an alien who had been convicted in state court of the state felony of simple drug possession was not guilty of an "aggravated felony" within the meaning of 8 U.S.C. § 1101(a)(43) and 18 U.S.C. § 924(c)(2). The majority opinion asserts that the Board is expert in immigration matters, not in the interpretation of the sentencing guidelines or the criminal code, and that we therefore owe it no deference in interpreting section 924(c)(2). But the Sentencing Commission, in electing to end its practice of listing aggravated felonies, chose to adopt the definition of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43). It did so in order to "conform[ ] the definition of 'aggravated felony' in the guidelines with the amended definition in the Immigration and Nationality Act." U.S.S.G. App. C, Amend. 562 (Nov. 1, 1997). The Board of Immigration Appeals is expert in interpreting the meaning of the Immigration and Nationality Act.

In my view, then, there is ample reason in the language and the history of 8 U.S.C. § 1101(a)(43) and 18 U.S.C. § 924(c), to interpret "aggravated felony" to require conduct punishable as a felony under federal law. Even if the language and history of those statutes did not militate toward such a result, they would certainly give rise to uncertainty about the proper construction.[4] In that event, we should follow

---

4. It should be apparent from everything I have said thus far that I deem the tangled statutory language to be ambiguous if it does not actually dictate a result contrary to that reached by the majority. In any event, words mean what they are intended to mean and I would construe the words in accord with Congress's intent. The majority in its footnote 2 quotes *American Rivers v. Federal Energy Regulatory Comm'n,* 201 F.3d 1186, 1204 (9th Cir.2000) (quoting *Hearn v. Western Conference of Teamsters Pension Trust Fund,* 68 F.3d 301, 304 (9th Cir.1995)) to the effect that " 'legislative history-no matter how clear-can't override statutory text.' " We and other courts often utter unconditional statements like this about the plain meaning rule, but are unable to live with them in practice. Some qualifications have to be added, as the Supreme Court itself has recognized. *See, e.g., Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051,

64 L.Ed.2d 766 (1980) ("Absent a clearly expressed legislative intention to the contrary, [the statutory] language must ordinarily be regarded as conclusive."). *American Rivers* itself had to acknowledge a qualification; in the same paragraph quoted by the majority, it referred to the rule of *Coronado–Durazo v. INS,* 123 F.3d 1322, 1325 (9th Cir.1997). There we said that "we rely on plain language in the first instance, but always look to legislative history to determine whether there is a clear indication of contrary intent." *Id.* at 1325. In the face of such irrefutable evidence of how we *actually* interpret statutes, we should cease reiterating a mechanical, unqualified plain meaning rule.

For the purposes of this case, the most pertinent qualification of the plain meaning rule is that stated in *Seattle–First National Bank v. Conaway,* 98 F.3d 1195 (9th Cir. 1996). There we said that we were governed

the rule of lenity and adopt the construction that is most favorable to the defendant. *See, e.g., United States v. Latimer,* 991 F.2d 1509, 1514 (9th Cir.1993). As it stands, the majority (and six other circuits) have construed statutes defining "drug trafficking" to include the crime of simple possession of drugs if the state defines it as a felony. Here the consequence is an increase of Ibarra–Galindo's offense level from eight to twenty-four because he was earlier convicted of possessing less than half a gram of cocaine. Because neither the statutes nor their history drives us to this absurd result, we should not embrace it.

by clear statutory language, and added: "At least that is true where what seems to be the plain meaning of the statute does not lead to 'absurd or impracticable consequences.'" *Id.* at 1197 (citations omitted). In this case, a

rigid "plain meaning" that the majority finds in the statutory language has led to absurd or impractical consequences. Congress cannot have intended the result the majority attributes to it.